Cavanagh, J.
(dissenting). This case arrived here at this Court’s request. Another vehicle was desired, along with Michigan United Conservation Clubs v Secretary of State (After Remand), 464 Mich 359; 630 NW2d 297 (2001), to demonstrate that the Court would apply the same logic to deny residents of the city of Detroit the right to a referendum vote on a rezoning ordinance for casino gambling that was applied in MUCC to deny this state’s residents the right to a referendum on new gun legislation. The majority, having decided in MUCC that the insertion of a dollar amount, however ill-intended, renders a new law referendum-proof, now is determined to opine on the merits of this issue again rather than following the normal course, or option, of remanding this case to the Court of Appeals for consideration in light of this Court’s decision in MUCC. For the reasons that follow, I would do neither.
Rather than affirm the trial court’s decision in this case, I would dismiss because this case has become moot. When intervening changes in a case’s factual circumstances make it impossible for a court to fashion a remedy, the case has become moot and should be dismissed. See UAW v Governor, 388 Mich 578, 582; 202 NW2d 290 (1972); see also Crawford Co v Secretary of State, 160 Mich App 88, 93; 408 NW2d 112 (1987). The changes in the factual circumstances of this case prevent this Court from being able to grant defendants Community Coalition for Empowerment and Ernest Johnson the relief they seek, so this case should be dismissed. Therefore, I respectfully *311 dissent from the majority’s decision to affirm the trial court.
i
This case arises from the implementation of casino gambling in the city of Detroit. A detailed understanding of the facts illustrates that this case has become moot.
By adopting Proposal E in 1996, voters decided to allow licensed casino gambling in Detroit. Plaintiff MGM Grand was subsequently chosen as one of the developers to conduct casino gambling, and plaintiff then selected a site in an existing building to establish a temporary casino facility. Next, the Detroit City Council adopted ordinance 24-98, which changed the zoning at the site from commercial to planned development, which would allow plaintiff to use the site for its temporary casino.
Defendants sought to refer ordinance 24-98. In accord with the referendum power reserved in the Detroit City Charter, art 12, § 101, defendants conducted a petition drive and submitted a sufficient number of valid signatures to the third-party defendant Detroit City Clerk, who certified the referendum petition in September 1998. Instead of subjecting ordinance 24-98 to popular adoption or rejection through a referendum election, however, the Detroit City Council repealed the ordinance, a power provided to the council by Detroit City Charter, art 12, § 107.
At the same session when the council repealed ordinance 24-98, it adopted ordinance 35-98. Like ordinance 24-98, the new ordinance rezoned plaintiff’s site to allow plaintiff to use the site for a temporary *312 casino, but the new ordinance additionally “appropriated [$333,333.34] to the temporary casino site support and infrastructure improvement appropriation
Defendants conducted another petition drive, seeking to refer ordinance 35-98. They again submitted a sufficient number of valid signatures to the Detroit City Clerk, but she informed them that the petition did not meet the legal requirements for certification because ordinance 35-98 was an appropriations measure, exempt from referendum. The city clerk, therefore, did not certify the referendum petition.[1]
On the same day that the city clerk denied certification, this litigation began. Plaintiff MGM Grand filed a complaint seeking a declaration that defendants’ petition was without legal effect. Several days later, defendants filed a third-party complaint against the Detroit City Clerk and the Detroit City Council, as well as a counterclaim against plaintiff. The counterclaim sought a temporary injunction against plaintiff,[2] and the third-party complaint sought declaratory relief and mandamus ordering the city clerk to certify the petition. After briefing and argument on cross-motions for summary disposition, the trial court issued a written opinion in January 1999, “finding that ordinance 35-98 is not subject to referendum under the City Charter of Detroit” because it was an ordinance for the appropriation of money, exempt from *313 referendum under Detroit City Charter, art 12, § 101. The trial court granted plaintiff’s motion, granted the third-party defendants’ motion against defendants, and denied defendants’ motion. Later that month, defendants claimed an appeal with the Court of Appeals. They did not assert any claim for a temporary injunction and did not move to stay the trial court’s decision. Before the Court of Appeals reached a decision, this Court took jurisdiction over the case. 464 Mich 855 (2001).
With its trial court victory, plaintiff pressed on with its plans for a temporary casino. Plaintiff renovated its chosen building and opened the temporary casino in July 1999. The temporary casino is approximately 75,000 square feet, contains various games including approximately 2,500 slot machines, and takes in over $1 million a day. Also, plaintiff constructed a nine-deck parking structure, which opened in December 1999, adjacent to the temporary casino.
n
Defendants request this Court to reverse the trial court’s decision and compel the city of Detroit to schedule a referendum election on ordinance 35-98 so the voters of Detroit can reject the ordinance. However, such a remedy would be impossible. With plaintiff having completed its temporary casino, even if there were a referendum on ordinance 35-98, and even if the voters of Detroit were to reject the ordinance, plaintiff’s temporary casino would be a prior nonconforming use that could remain despite any zoning change. Because a referendum could not change the zoning at plaintiff’s temporary casino, the *314 remedy defendants request is moot, and this case should be dismissed.
In Heath Twp v Sall, 442 Mich 434; 502 NW2d 627 (1993), this Court discussed prior nonconforming uses when zoning changes were effected by referendum. There, the defendants purchased land intending to build a mobile home park. The township rezoned the land to accommodate the defendants’ intent, but township residents brought a referendum and voted to return the land to its original zoning, under which the mobile home park was not allowed. Before the referendum returned the land to its original zoning classification, though, the defendants had taken steps toward constructing the mobile home park. This Court had to decide whether the steps the defendants had taken were sufficient to establish a prior nonconforming use, which requires that the property owner must have, at the least, engaged in work of a substantial character done in preparation for an actual use of the premises. See id. at 436-439. Elaborating, we quoted from our decision in Gackler Land Co, Inc v Yankee Springs Twp, 427 Mich 562, 574-575; 398 NW2d 393 (1986):
“The actual use which is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner. In this regard, preliminary operation such as ordering plans, surveying the land, and the removal of old buddings are insufficient to establish a nonconforming use. The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, whether there has been any tangible change in the land itself by excavation and construction.” [Heath Twp, supra at 440 (citations and internal quotations omitted).]
*315 If plaintiff MGM Grand’s activities at the temporary casino site pass this test, even if there were a referendum and zoning change, the zoning at plaintiff’s temporary casino could not be changed.
Plaintiff’s temporary casino would be a prior nonconforming use because its operations go well beyond the preliminary requirements identified in ornease law. Here, plaintiff has completely refurbished its building to serve as a casino, and has constructed a large new parking deck next to the refurbished building. This certainly amounts to a tangible change in the land. In addition, though, the analysis from Heath Twp was directed at an incomplete development that was alleged to be sufficient to comprise a nonconforming use, and considered only construction toward the development that occurred before the zoning was restricted. In this case, we have a completed business that has been operating for nearly two years. Thus, plaintiff’s temporary casino would certainly be a lawful and existing use, see MCL 125.216(1), insulated from any subsequent zoning changes.
Defendants’ failure to move to stay the trial court’s decision, or to pursue a temporary injunction, and the resulting establishment of plaintiff’s temporary casino are intervening changes in the facts of this case that make defendants’ requested relief moot. As mentioned above, even if there were a referendum election on ordinance 35-98, and even if the voters of Detroit rejected the zoning of plaintiff’s temporary casino site adopted by that ordinance, the zoning at the temporary casino site would remain because plaintiff would have established a nonconforming use that cannot be altered by a subsequent zoning change. See UAW v Governor at 582; Crawford Co at 93. *316 Hence, there is nothing for us to grant for defendants. Absent a possible remedy, this case has become moot. When a case is moot, rather than affirm the substance of the lower court’s decision, the proper resolution is dismissal. I, therefore, disagree with the majority decision to affirm the trial court’s judgment in favor of plaintiff. Additionally, I point out that, in addressing mootness, the majority relies on federal decisions, which, with a justiciability question like mootness, do not necessarily apply. See ASARCO, Inc v Radish, 490 US 605, 617; 109 S Ct 2037; 104 L Ed 2d 696 (1989).
in
For the reasons stated, this case is moot and should be dismissed. I respectfully dissent from the majority decision to affirm the lower court.
Kelly, J., concurred with Cavanagh, J.

 The city clerk cited a problem with the petition’s description of ordinance 35-98, required by Detroit City Charter, art 12, § 102, as an additional reason for denying certification. The validity of the description, and the city clerk’s decision, however, are not before this Court.

 Plaintiff points out that the defendants mentioned the temporary injunction in the counterclaim, but did not pursue it before the trial court.